**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA**

**FILED**
Jun 23, 2025
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

Jamie Osuna, CDCR #BD0868
PO Box 3476
Corcoran, CA 93212
  Pl.,

against

Erik Beam, Joseph Burnes, Hector Ferrel, Art Guillen, M. Hernandez, Espi, Jennifer Zamora, Maria Garcia, Crescent Cavanaugh, Jackson, Kevin Matta, OIA, AIMS, KCDAO, et a
  Defs.

Docket No.: 1:25-cv-00772  BAM PC

**COMPLAINT FOR:** COMPENSARY, DAMAGES PUNITIVE, INJUCTIVE RELIEF

1. **Violation of Fourteenth Amdt. (42 U.S.C. § 1983)**
2. **Violation of Fourteenth Amdt. (42 U.S.C. 1983 – Monell)**
3. **Negligence**
4. **Invasion of Privacy**
5. **Intentional Infliction of Emotional Distress**

**DEMAND FOR JURY TRIAL**

**STATE SUPPLEMENT**
Brought Under;(42 U.S.C.§1983) (civil right's action) and pursuant to 28 U.S.C §1367; state/federal claims.

RECEIVED

MAY 27 2025

CLERK U.S. DISTRICT COURT
EASTERN DIST...

**JURISDICTION & VENUE**

1. This is a civil rights action arising under 42 U.S.C. § 1983 to redress the deprivation under the color of state law of rights, privileges, and immunities guaranteed by the U. S. Constitution, secured by acts of Congress, providing for equal rights of persons within the jurisdiction of the U.S. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343 (a)(3). This Court is empowered to grant injunctive relief pursuant to Fed. R. Civ. P. 65 and may exercise supplemental jurisdiction under 28 U.S.C. § 1367.

2. Venue is proper in this judicial district, the Eastern District of California, pursuant to 28 U.S.C. § 1391 (a)(b) because a substantial part of the events and actions and omissions giving rise to Pl.'s claims occurred under California Department of Corrections (CDCR), headquartered in Sacramento, CA, which is within this judicial district.

**INTRODUCTION**

3. Plaintiff ("Pl.") has an open, potential death penalty case 19CM-1882 that occurred in CSP-COR. At all times thereafter, it was the mandatory duty of CSP-COR ISU officers and CDCR to maintain proper chain of custody of 19CM-1882 materials, stored on State/CDCR systems.

1

*OSUNA V. BEAM, ET AL*

1   defendents took personal photographs of plaintiff during a strip search
2   & posted & sold for profit crimescen photos of the plaintiff without
3   any authorization or any correctional goal defendents also release
4   inflammatory statments & medical information with the malicous
5   intention to cause harm to the plaintiff the releaese of inflammatory
6   information has caused the plaintiff to be consistently threatened &
7   has even affected his asaigned housing location & personal saftey
8   defendents in ius own confidential sources colaberated that officers
9   were showing inmates crime scen photos and that plaintiff was a rapist
10  & that the plaintiff would be attcked but would not just be a victim
11  plaintiff would defend himself cdcr defendents refuse to stop joseph bu
12  rns others from continuing showing the photos several inmates informed
13  pl that burns showed them the photos on his cell phone when they went
14  through shipping and ricieving  were defendent j.burns is currently
15  on duty cdcr defendents refuse to take down comments were a current cdc
16  r employee stated pl was a pice of shit had HIV and so on they continue
17  to allow cdcr employees to send a former lt. material from plaintiffs
18  file and other inmates to sell defendents and distric attorney stated
19  only law enforcment could have the photos not palintiff do to the photo
20  s show blind spots and if releaesed would threaten the saftey and secur
21  ty of the prison corcoran litigation cordinator D.goreee and P.williams
22  agreed and so did a judge yet cdcr & prosecutuion refuse to order the
23  take down of the photos from more than 15 sites its a crime in californ
24  ia to sell autopsy & crimescen photos since around 2021 the laws were
25  active when defendents committed the actions. pl brings a state claim i
26  n federal court pursuant to 28 U.S.C§1367. & seeks compensary damages
27  injuctive relief, declatory relief, punitive damages & any relief jury
28  jury sees fit in his state and federal claims.

## PARTIES.

1  Pl. Jamie Osuna is a pro-se state prisoner incarcerated at CSP Corcoran
2  state prison corcoran california.

3  Def, Erik Beam is a salinas valley state prison employee lt.at time & is
4  bieng sued in his individual & offical capacities.

5  Def. joseph burnes is a corcoran sgt. & is bieng sued in his individual &
6  offical capacities.

7  Def. Hector ferrel was a former RJD Donovan lt. when incident occured & i
8  s sued in his individual offical capacities.

9  Def. maria garcia is bieng sued in her individual offical capacities.

10  Def. cresent Cavanaugh is a current employee c/o at csp sac & is sued in
11  his individual offical capacities.

12  Def. art guillen corcoran A.W is sued in his individual/offial capacities.

13  Def.M.hernandez is sued in his individual offical capacities

14  Def. espi is sued in his individual offical capacites.

15  Def. jennifer zimora is sued in her individual offical capacities.

16  Def. kevin matta is sued in his individual offical capacites.

17  Def. C.jackson is sued in his individual/offical capacities.

### .EXUASTION OF ALL AVAILABLE REMEDIES.

19  pl has exuasted all levels of the geievence procedure proccess; on all
20  claims arising from complaint;

21

### GOVERMENT CLAIM NOTICE EXUASTED..

23  pl has filed his goverment claim within 6 months of the incident & has
24  recieved his **right to sue notice** & has filed complaint under 1367 state
25  & federal claim in federal court within befor 6 months of the notice;
26  all claims and here by mentioned are exuasted in goverment claim notice

27

28

1    Def. Kings county district attorneys Office is a local governmental entity

2    and was is in charge of oversight Of materiels and to enforce court orders

3    protective orders over investigative reports/contents hereby mentioned in

4    complaint & in charge of there witnesses & investigators.

5    Def. California department of corrections is a governmental state agency

6    Def. jon/jane does from Office of internal affiars office a governmental

7    state agency created to investigate CDCR's staffmisconduct.

8    Def. jon/jane Does from (A.I.M.S) a state governmental created agency

9    within cdcr in charge of investigating inmates staffmisconduct grievences

10   Def. m. gonzales with (A.I.M.S) investigative office ofr CDCR.

11   Def. J. Weber is corcorans (AOD) in charge of officers inmates and the

12   final decision maker regarding plaintiffs grievences over Data breaches

13   from plaintiffs files and the continued access to crimscen photos.

14   Def. I.S.U Officer Gonzales who was in charge of the his reliable confiden

15   tial source telling him officers are showing inmates the crimescen photos

16   on there phones & telling inmates inflammotory things that would threaten

17   plaintiffs life saftey.

18   Def. vincent tapiz DRB counselor & saftey managment advisor in charge of

19   plaintiffs housing based on notieriety & threat assesment placement.

20   Def. Edina Thomas Chief of CSU Classifications services unit.

21   Def. J. Harden, Special Agent in-charge Office of coorrectional saftey

22   Def. R. Broomfield Diector of department of corrections

23   Def. Jane Doe director of Adult institutions CDCR

                              **FACUAL STATMENT**

25   Around the end of 2024 for the third time an inmate located in the plaint

26   iffs unit at corcoran SHU told the plaintiff that " hey when i went

27   through shipping & recieving S.G.T J. burnes showed me the crimescene

28   photos of your case on his cell phone" Plaintiff stated your the third

                              [4]

                                        OSUNA V. BEAM, et

1  inmate to tell me that", As the plaintiff was bieng escorted to varies of
2  his appointments the plaintiff noticed an inmate yelling at him from the
3  recreational yard cages the inmate stated " he has HIV better stay away
4  from him" another inmate stated how do you know that"? "he sttated "the
5  c/o says so"! "Plus its on social media this dude had access to his file"
6  some bravo guy' other inmates beggin yelling i eat after you& other shit
7  how come you didn't tell me you had the Hives you piece of shit plaintiff
8  stated i dont know who told you that he may of missunderstood my file
9  inmates then beggin threateni9ng plaintiff "were going to kill you"
10 upon every time plaintiff would be escorted inmates continued to state
11 things such as my girl seen the crimscen photos on social media man the
12 are saying on there this " niggas a wierdo and gets sexual gratification
13 from his stunts and put intestines everywhere" ya nigga i kill you the
14 plaintiff went back to former lt. hector ferrels social media account to
15 see if theres anything new and there was around the end of 2024 or so he
16 he created subscription accounts where if you buy a subscription the crim
17 e scen photots and pictures of the plaintiff in prison fron personal phon
18 es too will be unlocked and given to the user the plaintiff did further
19 investigation and found the defendent admitting stating " i went into his
20 records when the plaintiff filed a grievence the def took it down the pos
21 t but the plaintiff saved it. the plaintiff then informed his counselor
22 C.jackson & J. Zimora & showed them the photos on line and comments
23 current & former c/o are making the defendents stated plaintiff had to fi
24 file a lawsuite. the plaintiff stated " On Wed, july 29,2020 12:04p.m fro
25 m people v. osuna crime scen photos: the judge agreed with the D.A that
26 i could "NOT" be in possesion of the photos or anybody besides D.A defens
27 e team because per title 15 they show blind spots of prison & is a securi
28 ty risk" pl stated corcoran agreed so why arnt you guys having these soci

1   al media outlets to take down photos & inflammatory comments of me & of

2   the inside a mental health unit without authorization for them to be made

3   public defendent stated theres nothing he can do his supervisors would be

4   ferrious if he did somthing plaintiff stated eric beam others admitted

5   illegally accessing my file he was in salinas valley & had no excuse to

6   o accesss the records/photos or authorization why didnt you guys send me

7   a notification Databreach i got one when my dental records were stolen po

8   sted on social mediain 2019 & when a c/o posted a picture of me & my hous

9   ing def stated you have to asked my supervisors upon the plaintiff bieng

10  escorted inmates continued to yell you baby killer you rapist were going

11  to kill you, the plaintiff informed m.hernandez gonzalez, espi who stated

12  there not investigating shit" plaintiff filed complaint the plaintiff is

13  not charged with this & c/o should not be telling inmates this with crime

14  scen photos/ other personal ones they took of me the pl was escoreted to

15  a DRB housing assignment involing defendents, m.hernandez,espi of isu, J.

16  harden special agent of saftey, v.tapiz counselor, edina thomas classific

17  tion, palintiff explained why atrnt they excepting documenting taking any

18  action regarding photos with inflammoatory commentes that having inmates

19  threaten me director & counselor stated we thought you were only to ask

20  questions director stated there aware but it is what it is nothing going

21  to be done  pl informed sent & attached documents to complaints of def fe

22  made a youtube video about pl current open case" under Prison:luitientat

23  reveals how the jaime osuna incident transpired" Def Garcia stated "good

24  one hector! i read this crazy fuckers file & got the crimescen photos of

25  his dead cellmate on seperate video def garcia stated "i read his file in

26  depth;" & "that i read offical reports & got the crimescen photos from hi

27  s last killing" "i believe he gets sexual gratification from the act of

28  taking life" Def cavanaugh stated "LMAO good one he liked me but hated pa

[6]

1   and he is HIIV positive. POS!!" [sic.] Def. Ferrel replied to Def. Cavanaugh, **"I read his file**

2   **numerous times**. He had SEVERAL gassings with blood on staff. That has to be the absolute

3   worse. I would lose my damn mind." [sic.] (Emphasis added.) Pl. does not have HIV/AIDS.

4   Def. Ferrel also published, "I don't actually believe at the time he had a (S) "single cell" on his

5   file…I'm sure someone on here will reach out to me and give the 411." Ferrel provided

6   interviews to California Insider, Matthew Cox, Woodcut Media, inter alia, describing the crime

7   scene and giving nonfactual details about 19CM-1882, including that Pl. "hung intestines"

8   around the cell. Def. Ferrel has referenced Hanford, CA—the trial county and courthouse of

9   19CM-1882—as Ferrel's birthplace.

10  40. Def. Ferrel posted a CDCR subpoena issued to Ferrel's Google accounts through which

11  accounts Ferrel has published hundreds of materials showing unreleased CDCR incident photos,

12  videos, and similar materials. About this subpoena, Def. Ferrel posted that Ferrel was playing

13  chess while CDCR was playing checkers, that Ferrel didn't use his Google accounts to get

14  information; the use of the Telegram app was referenced.

15  41. After CDCR's OIA opened an investigation on Ferrel, he published a video that CDCR were

16  "fucking idiots," and to let "it be a lesson to you guys" who were employed with the

17  Department that CDCR were "corrupt motherfuckers" that could "kiss [Ferrel's] fucking ass,"

18  asked if employees wanted to be a part of that "fucking Nazi Germany Gestapo" and that Ferrel

19  was "looking out" for CDCR employees, that "the closer [CDCR] gets to me, the worse it's

20  gonna be for [CDCR.]"[1] Ferrel then immediately published and sold through Patreon 19CM-

21  1882 crime scene and investigation photos on his Patreon.[2][3] Ferrel's social media accounts,

22  linked to one another under common naming, promoted this sale with knife and blood emojis

23  and statements such as "HORRIFIC," and "extremely graphic," inter alia.[4][5] Ferrel further

24  published a monologue directed to CDCR Headquarters, stating, "Hey! Stop trying to figure out

25  whose giving me information, okay? Look to your left. Look to your right. Some of them are

26  [1] https://www.instagram.com/p/C7pXadcy7V-/

27  [2] https://www.patreon.com/posts/horrific-picture-105835721
    [3] https://www.patreon.com/posts/extremely-105717912

28  [4] https://www.instagram.com/stories/hector_bravo/3386802382439279592
    [5] https://www.youtube.com/post/UgkxJ155EF8r2w4Utr57CEg3-W0MkXPs0q9d

*OSUNA V. BEAM, ET AL.*

**[7]**

1  giving me information. "Right"?, "Some of them close to you-not every-

2  body's a fucking bitch & lame cowards Plaintiff found on https://www.in-

3  stagram.com/p/C56cUtsP2gl Defendent ferrel then stated a monologue video

4  " i refused to work with the OIA dont worry i got your guy's back if aske

5  d about you" on https://www.instagram.com/P/C8uyvNbPv2u. ferrel then

6  stated "there investigating me because im reporting the curruption in

7  prison" he then showed warrents regarding release of other inmates

8  confidential material & so on. Around the end of 2024 it was brought to

9  the plaintiffs attention & otheres who went through thousands of the

10  plaintiffs files that joseph burns & erik beam sent out & accessed the

11  plaintiffs confidential c-file & sent out crime scen photos to at leaese

12  ten other officers & when defendent erik beam recieved photo he stated

13  "prison can get alot worse", at lease some photos were leaked to social m-

14  edia. the plaintiff immediately filed another grievence on the defendents

15  & A.I.M & O.I.A and there investigators who claimed over & over no one

16  accessed plaintiffs file & the crimescen photos were not on social media

17  the defendents to present day continue to deny any misconduct. the

18  again informed the warden of corcoran & art giullen & counselors j.zimora

19  C. jackson & ISU of the more leaked photos/comments made by employees of

20  CDCR art.guillen stated ferrel is retired & stated 'whats wrong with sell

21  ing crimscen photos"? theres alot worse out there the def told plaintiff

22  regarding currently employee def c/o cavanaugh stating plaintiff had HIV

23  & was A POS & gassed c/o with blood he stated hes expressing himself &

24  plaintiff must get remidyd out side of grievence proccess pl informed the

25  defendents that cdcr policys forbide & are strict agianst inflammatory

26  remarks made agianst inmates or releaes of health care information pl

27  continued every month to keep cdcr on notice of employees accessing

28  pl records & going on social media violating court protective orders

45. Under normal protocol, Defs.' ISU's, OIA's, AIMS', mandatory duties are to accept evidence and investigate inmate allegations. For months, Def. ISU refused to accept this evidence. Despite this refusal, Pl. continued to voice concerns and seek assurances from ISU that ISU were working on tracking the leaks and getting the materials removed from the internet. Def. ISU later formally acknowledged the leak to Pl. but refused action because the photos were "already out there" and "what difference would it make," and he didn't want to lose his job

46. Pl. provided posts of self-identified officers using their real, full names and photos on various platforms, including Def. Ferrel, when describing the gratuitous photos and entering Pl.'s File. During interviews with Pl., Defs. Does, OIA, AIMS, and CDCR headquarters asked Pl. how did Pl. know that these self-identified CDCR employees describing, sharing, and/or selling the photos were not just imposters pretending to be CDCR employees.

47. Throughout 2024, Pl. provided this same information and materials to Defs. Zamora and Matta, correctional counselors, requesting that his file be secured and locked, as it had been previously locked by CHCF. Zamora told Pl. that this higher security was only for "celebrities," and that she didn't think Pl. needed this higher security. Matta agreed with Zamora. Both Zamora and Matta told Pl. to file grievances over the file breaches and photos dissemination. Against CDCR protocol, Defs. Zamora, Matta did not report the misconduct when it was brought to their attention. In 2024, Pl. also informed correctional counselor Def. Jackson, who refused to take the documentation, refused to raise security on Pl.'s File and failed to report the misconduct.

48. Late 2024, ISU officers Defs. M. Hernandez and Espi completed Pl.'s safety assessment used for Pl.'s housing. They refused to take Pl.'s documents with the above-referenced links/print outs, inter alia, and of threats against Pl. posted online. This also included the interviews with the CDCR program director falsely stating Pl. was a rapist/had a rapist charge. Pl. was never accused of/charged with rape. After such interviews and other media, inmates began to threaten Pl. and call him a "rapist" and a baby killer, stating their girlfriends had seen this information online, despite that Pl. has never been accused of/charged with rape or killing a baby. Pl. had included CO Robert Gonzales' post on a 19CM-1882/Pl. video, "The real homies

*OSUNA V. BEAM, ET AL*

**[9]**

1   will put tge justice soon." [sic.] Pl. told and showed Defs. Hernandez and Espi documentation,

2   reports on how ISU's own CSes informed ISU that COs were showing the photos to inmates

3   and making inflammatory comments, like those cited above, that would get Pl. attacked, that

4   Pl. would not just let himself be a victim and fight back. Defs. Hernandez and Espi refused to

5   put this information into Pl.'s safety assessment.

6   ## THE DEFS.' MISCONDUCT IS EXPOSED AND ADMITTED.

7   49. For months, Defs. Does, OIA, AIMS, ISU, CDCR continued to deny the evidence Pl. provided

8   showing posts of self-identified officers using their real, full names and photos on various

9   platforms, including Def. Ferrel, describing the photos and admitting they illicitly entered Pl.'s

10  File for non-work purposes, inter alia.

11  50. Faced with Pl. stating Pl. was going to pursue litigation against CDCR, Defs. Does, OIA,

12  AIMS, CDCR, during their interviewing Pl., acknowledged the photos were shared and posted

13  online, but that these Defs. were not going to take any action, that Pl. would have to file civil

14  litigation to take care of it.

15  51. Def. Guillen, as chief deputy warden, investigated and made final decisions on grievances—this

16  includes Pl.'s grievance regarding Def. Ferrel selling the gratuitous photos on Patreon, inter

17  alia. Def. Guillen rejected Pl.'s grievances stating that Def. Ferrel was "retired" and therefore

18  immune from any resolution/corrective actions. Guillen stated the same of Garcia and refused

19  to address her slanderous, inflammatory post that would get Pl. attacked. Later, when Ferrel

20  published and sold a video recording from a case unrelated to Pl., Guillen facilitated a warrant

21  to be issued to Ferrel's accounts.

22  52. Def. KCDAO, as prosecutor of 19CM-1882, works directly with Def. ISU to gather, maintain,

23  inter alia, information/evidence for 19CM-1882. KCDAO appeared in the local media's

24  podcast on Pl./19CM-1882. The reporter, as herein described, had described the photos and

25  described knowing she was not supposed to have them. Pl., during a *Marsden* motion, stated

26  that the photos were being shared online, inter alia. Faced with their misconduct becoming

27  public, Def. KCDAO denied there had been any breach of 19CM-1882 and that Pl.—a

28  *Coleman* mental health inmate—was only "delusional." Pl. later filed complaints with the CA

1  systems without authorization. CCPOA, CDCR officers' official union, as well as CDCR's

2  academy/officials, have given notice to personnel to stop taking and sharing any information/

3  materials with Def. Ferrel. Various CDCR personnel have even published this information on

4  public forums.

5  57. Additionally, Def. KCDAO, prior to Def. Ferrel selling the photos, and other incidents herein

6  described, acknowledged during court proceedings the high publicity of 19CM-1882 and the

7  danger this entailed for Pl.'s right to a fair trial. As a mitigation action to preserve Pl.'s

8  Constitutional rights, Def. KCDAO moved the court to seal 19CM-19882 records stating that

9  the media sought to publicize the details/materials from 19CM1-1882.  KCDAO later stated to

10  the Court that any release of 19CM-1882 photos jeopardized the safety and security of CSP-

11  COR.

12  **CDCR FAILED TO TRAIN ITS EMPLOYEES ON CDCR'S POLICY REGARDING
PHOTOS OF WORK-RELATED SCENES ON PERSONAL CELL PHONES AND
13  SHARE/USE OF ANY MATERIALS STORED ON STATE/CDCR SYSTEMS**

14  58. CDCR, despite a history of employees taking and sharing images, information, materials from

15  private inmate/incident records, failed to establish a policy regarding treatment and

16  photographing of crime/incident scenes. CDCR also did not follow or enforce its policy

17  regarding employees' use of personal cellphones to capture work environments and records,

18  failure to report misconduct, disclosure/discussion of confidential work information to social

19  media, other media, accessing information/files when having no related duties. CDCR policy

20  provides (inexhausted list):

21  
22     a)  Unauthorized photography by staff is prohibited. Devices with recording capabilities are
      barred unless explicitly permitted (DOM 12070.18.)
23     b)  DOM 13010.11 *Authorized Release of Information* – Directly limits what information
      employees are authorized to release to the media or public about any inmate.
24     c)  No photography/media in high-security zones without Secretary-level approval (DOM
      13010.8(b)).
25     d)  DOM Chapter 4, Article 39 *Social Media Policy* – Directly governs employee use.
   e)  DOM Chapter 1, Article 13 *Public/Media Info* – Covers media interactions.
26     f)  DOM Article 15 *Information Practices* – Directly governs employee use of/disclosure of
      inmate information "in keeping with the right to privacy of inmates."
27     g)  DOM Article 14 *Internal Affairs Investigations* – Directly governs all allegations of
      employee misconduct shall be promptly reported and reviewed, investigated

28

*OSUNA V. BEAM, ET AL.*

[11]

CDCR requires that "Employees and appointees of the Department…at all times..[shall] demonstrate professionalism, honesty, and integrity…comply with all laws and regulations…report misconduct or any unethical or illegal activity and fully cooperate fully with any investigation..." (DOM 33030.3.1); and it holds its peace officers to a higher standard of conduct on and off duty under *Law Enforcement Code of Ethics*, "**Confidential information received in my official capacity shall remain undisclosed** unless disclosure is necessary in the performance of my duty. I will never engage in acts of corruption, bribery, insubordination or the obstruction of justice, nor will I condone such acts by other peace officers. **I will immediately report acts of misconduct** by staff of my department and cooperate with all legally authorized agencies and their representatives in the pursuit of justice. (Emphasis added.) (DOM 33030.3.3.) CDCR requires that all employees shall "comply with the CDCR Code of Conduct." (DOM 31040.3.4.3.) This extends to managers and supervisors. (DOM 31040.3.4.2.) CDCR stated CDCR has a "**responsibility to protect the privacy, safety, and other rights of incarcerated people**. Furthermore, CDCR is committed to protecting crime victims and their next of kin from the unnecessary disclosure of information that may traumatize…" (Emphasis added.) (DOM 13010.3(b)).

59. CDCR, Guillen, Does did not discipline the employees who took cellphone or other photos of the 19CM-1882 crime scene and investigation and have stated orally to Pl. and/or documented in Pl.'s grievances responses, and/or other documents that CDCR, et al, were not pursuing any action. These statements and actions, combined with various employees who took cellphone, other photos of the crime scene and then shared these photos with various parties and the public, demonstrate that CDCR failed to adequately train, supervise, and discipline its personnel regarding its policies/procedure related to the use of personal cellphones to photograph work-related scenes, and access to work-related materials for nonwork purposes.

## CDCR REFUSES TO PROVIDE ANY INFORMATION TO PL.

60. After CDCR had investigated and found Def. Beam had illicitly taken 19CM-1882 photos for nonwork, personal gratification reasons and then shared these photos with colleagues and non-

1    CDCR parties, at no time had CDCR taken any action to secure Pl.'s file, to remove the photos

2    from online and/or from the possession of authorized parties and never notified Pl. of Def.

3    Beam's, and others' breaches. CDCR found Def. Beam first lied in denying his actions, then

4    lied to say he had correctional duties and accessed them. Pl., after much later learning of Def.

5    Beam's actions, and the other taking, sharing, selling of the photos described herein, Pl.

6    requested that CDCR and Defs. ISU, OIA, AIMS, et al, conduct an internal affairs investigation

7    to determine the identities of personnel involved and the extent of the unauthorized taking and

8    dissemination of the photos.

9    61. For months Defs. ISU, et al, refused to investigate and refused to accept Pl.'s evidence,

10    including print outs of self-identified CDCR personnel describing illicitly entering Pl.'s file to

11    get the photos and other materials. Pl. continued to submit oral and written complaints, inter

12    alia, and asked for more information about CDCR/CDCR agencies' (e.g., ISU, OIA, AIMS, et

13    al) investigation of CDCR employees' misconduct, including the identity of all personnel who

14    took photos and materials from 19CM-1882/Pl.'s records, the steps CDCR, et al, have taken to

15    identify all personnel who had the photos on their personal devices; the steps the CDCR, et al,

16    had taken to determine whether and to what extent personnel who had such photos or

17    recordings shared them with other members of CDCR or third parties; the steps CDCR, et al,

18    have taken to secure all photos, recordings, inter alia, of 19CM-1882 in the possession of its

19    personnel; steps CDCR, et al, have taken to secure Pl.'s File and 19CM-1882 records.

20    **PL. SERVED A NOTICE OF CLAIMS IN ACCORDANCE WITH THE GOVERNMENT CLAIMS ACT**

21    62. Pursuant to CA Gov. C. § 900, et seq., Pl. filed a written notice of claims based on the same

22    underlying facts and issues alleged in this complaint. As of this filing, CDCR has not

23    substantively responded to Pl.'s notice of claim or provided a concrete timeline for when it will

24    respond. The CA Gov. Claims Office responded due to complexity that it would not be able to

25    process the claim within the time restriction.

26    **PL. HAS SUFFERED SEVERE EMOTIONAL DISTRESS/Physical injurys**

27    63. Pl. has suffered and continues to suffer severe emotional distress with emotional injuries

28

*OSUNA V. BEAM, ET AL*

with physical injury's, as the day's went on several correctional officers
stated to plaintiff "you dont have shit coming you have HIV and you be
gassing my boy's" an inmate stated to plaintiff the c/o's are telling me
you got HIV and are a rapist and did crazy shit to your celly why didnt
you tell me i probably got somthing now"! plaintiff stated there lieing
dont listen to them there just trying to put a target on me like they've
always been doing since ive got here in 2028" plaintiff stated there liein
g" inmate stated "i dont believe you wait till i see you imma stabb you
after weeks and months of threats & more the palintiff already diagnosed
with a serious mental illness & is currently on PC2602 petitoned for
involuntary medication for bieng danger to self others/gravely disabled
lack capacity ect.. diagnosed with schizophrenia, psychotic disorder,PTSD
the plaintiff beggin decompensating & do to threats induced his PTSD
symptoms wich triggered flashbacks blackouts plaintiff awoke with serious
self inflicted injuries & banged his head & had a large lump on head
suffered extrem headaches after the plaintiff beggin having triggers of
psychosis & suffered further cuts on his arms legs deep gash wounds the
plaintiff everytime he would be harrased by inmates/c/o's the plaintiff
would dissossociate and have a episode then injuries, at one of the plaint
iffs appointments inmate told plaintiff " his wife told him she seen the
photos on social media & youtube & the inflamatory comments, upon leaving
to court def j.burnes came out isu called him out & rolled down back windo
w j.burns isu officers stated you still trying take down photos/comments
i told you you would loose just plead guilty it all be over j.burns stated
there not going to do nothing to me the attonerny general would have by no
w hes one of us pl stated well see although ISU'S confidential source told
them c/o were showing pictures to inmates OIA,AIM,D.A,Wardens,directors re
fuse to take back or see other content in there possession absent this if

[14]

1   the photos will not continue to circulate and be provided to jury members, be studied by false

2   witnesses/CSes to convict Pl., inter alia. This uncertainty has caused Pl. severe stress and

3   anguish, triggered his mental illnesses symptoms, resulting in self-harm, decompensation,

4   PTSD symptoms, inter alia, as documented by CDCR.

5   65. Pl.'s anxiety has been reinforced by widespread publishing and sale of 19CM-1882 photos

6   online and publishing nonfactual details. Numerous inmates have told Pl. that they had scene

7   the photos, that officers showed them these photos. Various parties have told Pl. that they have

8   seen the photos online. The photos have even been used to promote an interview with a CDCR

9   program director and other social media content.

10   66. The number of CDCR employees who took the photos, the fact CDCR employees shared the

11   photos with others, even sold the photos, and CDCR's grossly inadequate steps to prevent

12   dissemination of the photos have made the above accounts plausible, which triggered Pl.'s

13   emotional distress with injuries, incorporated under PLRA, of self-harm/mutilation, triggered

14   PTSD symptoms. For the foreseeable future, the photos will almost certainly continue to be

15   shared, published online, and sold, and viewers will have no way of knowing whether the

16   details described as happening in 19CM-1882 are true or false when paired with the photos.

**FIRST CAUSE OF ACTION: 42 U.S.C. § 1983; VIOLATION OF THE FOURTEENTH**
17
**AMDT. (AGAINST DOES 1-TBD, BEAM, FERREL, BURNES, CAVANAUGH,**
18
**GARCIA)**

19   67. By taking photos of the 19CM-1882 crime scene and investigation and sharing and/or selling

20   such photos with the public, Defs. Does, Ferrel, Beam, Burnes deprived and continue to

21   deprive Pl. of his right to control images of his body during an investigative strip search in a

22   mental health, high security area of the prison, and the right to control court-sealed photos and

23   case materials, and/or work-privilege, inter alia, for an open felony. The Ninth Circuit has

24   affirmed substantive due process rights to privacy.

25   68. Defs. Does, Beam, Burnes knew or should have known that taking and/or sharing and/or

26   selling photos of 19CM-1882/Pl. for personal, non-correctional purposes violated the law.

27   69. Def. Ferrel knew or should have known that taking and/or sharing and/or selling photos of

28   19CM-1882/Pl. for personal, non-correctional purposes violated the law. Def. published he had

*OSUNA V. BEAM, ET AL*

1    entered Pl.'s file "numerous times," and had expressed his actual knowledge that publishing

2    such evidence caused evidence spoilation, expressed malice and intention through various

3    social media, including when threatening and mocking CDCR, Guillen, ISU, others, that his

4    post had "nuked" the evidence to that felony case.

5    70. Defs. Does, Beam, Ferrel, Burnes were acting under the color of law at the time of their

6    actions of accessing Pl.'s File and/or the crime scene and taking and/or copying and/or

7    accepting in any manner the photos. These Defs. took and/or accepted the photos illicitly taken

8    from State-owned systems while in uniform, on duty, and in an area where public access was

9    prohibited and only CDCR employees who were involved with the investigation were

10    authorized to access. After taking and/or copying and/or accepting the photos in any manner,

11    these Defs. possessed and shared them while in uniform and/or on duty, or otherwise in

12    connection with or by virtue of their employment with CDCR.

13    71. By Def. Cavanaugh, having identified himself as a CDCR employee, taking and/or publishing

14    about Pl.'s privileged, private medical record information, such as HIV/AIDS status, online,

15    deprived Pl. of his right to control his privileged medical information. Def. Cavanaugh knew or

16    should have known that disclosing any privileged, private medical information stored in CDCR

17    systems, such as HIV/AIDS status, for personal, non-correctional purposes violated the law.

18    That Pl. does not actually have HIV/AIDS further rendered Def. Cavanaugh's statement libel

19    per se.

20    72. Def. Garcia identified herself as a CDCR employee online and stated online that she illicitly

21    entered Pl.'s records for personal gratification and engaged with the public with nonfactual

22    details and unfounded beliefs about Pl.'s charges, including that Def. Garcia believed Pl. acted

23    for sexual gratification, and provided nonfactual details regarding 19CM-1882, deprived Pl. of

24    his right to control his confidential records and privacy. Def. Garcia knew or should have

25    known that disclosing records/information stored in CDCR systems, for personal, non-

26    correctional purposes violated the law. Furthermore, Def. Garcia's statements were libel per se.

27    73. As a direct and proximate result of the conduct, actions, and omissions of the Defs. Does,

28    Ferrel, Beam, Burnes, Cavanaugh, Garcia, Pl. suffered and is suffering from the gratuitous

*OSUNA V. BEAM, ET AL*

[16]

1   photos posted with inflammatory, nonfactual, harmful, comments to the public, backed up by

2   Defs. Does, and which has caused inmates and officers to threaten Pl. from believing that Pl.

3   has HIV, and /or believing the inflammatory comments that would get Pl. attacked, and which

4   has caused daily threats against Pl., as is backed up by CSes that told this to ISU. These

5   statements/posts, actions herein cited triggered/trigger Pl.'s qualified mental illnesses, mental

6   health symptoms and worsened, triggered/trigger Pl.'s PTSD symptoms, which led to physical

7   injuries and disassociation, induced psychosis that led to injures of blackouts, self-harm, and

8   triggers/triggered manic depressive episodes due to dealing with consistent, daily threats, and

9   which also affects Pl.'s housing, in an amount to be proven at trial.

10  74. Defs. Does, Ferrel, Beam, Burnes, Cavanaugh, Garcia committed the acts alleged recklessly

11  and with callous disregard for Pl.'s rights, entitling Pl. to punitive damages in an amount

12  appropriate to punish the Defs. Does, Ferrel, Beam, Burnes, Cavanaugh, Garcia and to make

13  an example of them to the community.

14  **SECOND CAUSE OF ACTION; 42 U.S.C. § 1983 (MONELL); VIOLATION OF
FOURTEENTH AMDT. (AGAINST CDCR, KCDAO)**

15  75. Pursuant to 42 U.S.C. § 1983, public entities are liable for Constitutional violations when

16  execution of their official policy or custom deprives an individual of their Constitutional rights.

17  A public entity is also liable for Constitutional violations when its failure to establish a policy

18  or procedure or to properly train, supervisor, and/or discipline its employees amounts to

19  deliberate indifference to the rights of persons with whom its employees come into contact.

20  76. Upon information and belief, CDCR Does acted with deliberate indifference to the

21  Constitutional rights of Pl., and others similarly situated, through the conduct, omissions set

22  forth above, which consist of the following customs, polices, and/or patterns of practice: a)

23  Failing to adequately train and supervise CDCR employees to ensure they do not take and

24  share photos of crime scenes or materials from inmates' files for personal, non-correctional

25  purposes; 2) Failing to enforce a policy or procedure addressing informational/data breaches

26  that lead to dissemination of materials to the public 3.) Failing to investigate and/or discipline

27  personnel who have unnecessarily taken and/or shared and/or sold photos and materials illicitly

28

*OSUNA V. BEAM, ET AL*

1    taken from State/CDCR systems—namely, 19CM-1882 crime scene and investigation photos.

2  77. Given the frequency with which CDCR personnel work at crime and incident scenes involving

3       fatalities and high-profile inmates, it was obvious that some would be tempted to take photos

4       of the crime scene or incident materials on their personal cellphones or download or otherwise

5       digitally access them. CDCR knew there had been historical breaches of Pl.'s records that

6       included online publishing of Pl.'s records and information by CDCR staff. CDCR was also

7       aware, on account of the CHCF committee previously "locking" Pl.'s file specifically due to

8       staff interest in Pl. and 19CM-1882, that the potential for CDCR employees to take photos

9       from Pl.'s file for non-correctional purposes was a likelihood. CDCR was also aware that staff

10      had taken celebrity, and other inmates' items, records and similarly disseminated and/or sold

11      such materials online. CDCR was aware that new comments, information, crime scene and

12      investigation photos have continued to be published online throughout 2024 and that staff were

13      active on media and social media about Pl./19CM-1882.

14  78. Based on the facts set forth above, CDCR was on actual and/or constructive notice that the

15      absence of policy regarding crime scene photos would likely result in violations of Pl.'s

16      Constitutional rights.

17  79. The actions of Defs. Does, Beam, Ferrel, Burnes reflect the pattern of practice, as evidenced by

18      the fact that the misconduct was not limited to a lone employee; and that Def. Ferrel, for

19      instance, sells and has continued to sell until the present many such old and recent prison

20      crime/incident scene photos and recordings online. Such materials have been illicitly taken

21      from State/CDCR systems for personal gain and purpose. Additionally, Defs. ISU, OIA,

22      AIMS, Guillen, CDCR all finally acknowledged personal knowledge that unnecessary crime

23      scene and investigation photos specifically from 19CM-1882 were being sold and traded

24      online and that new photos, inflammatory, nonfactual details, inter alia, have newly been

25      published online throughout 2024 to the present.

26  80. As a direct and proximate result of the conduct, actions, and omissions of the Defs. CDCR,

27      KCDAO, Pl. suffered and is suffering from the gratuitous photos posted with inflammatory,

28      nonfactual, harmful, comments to the public, backed up by Defs. Does, and which has caused

*OSUNA V. BEAM, ET AL.*

1   inmates and officers to threaten Pl. from believing that Pl. has HIV, and /or believing the

2   inflammatory comments that would get Pl. attacked, and which has caused daily threats against

3   Pl., as is backed up by CSes that told this to ISU. These statements/posts, actions herein cited

4   triggered/trigger Pl.'s qualified mental illnesses, mental health symptoms and worsened,

5   triggered/trigger Pl.'s PTSD symptoms, which led to physical injuries and disassociation,

6   induced psychosis that led to injures of blackouts, self-harm, and triggers/triggered manic

7   depressive episodes due to dealing with consistent, daily threats, and which also affects Pl.'s

8   housing, in an amount to be proven at trial.

### THIRD CAUSE OF ACTION NEGLIGENCE (AGAINST DOES 1-TBD; CDCR, OIA, AIMS, ISU, KCDAO, ZAMORA, MATTA, JACKSON, HERNANDEZ, ESPI GARCIA, BURNES, GUILLEN)

11  81. Pursuant to CA Gov. C. § 820(a), public employees are liable for injuries caused by their acts

12  or omissions to the same extent as a private person.

13  82. The Doe Defs. routinely undertake the care, custody of inmate files/materials during incidents

14  and daily living, and by virtue of this owned a duty to Pl. to use ordinary care in their

15  treatment of Pl.'s records and files, including and especially the photos of Pl. taken during

16  Pl.'s strip search in a mental health, high security area of the prison, and they further had an

17  obligation to refrain from taking or sharing images of Pl.'s open case 19CM-1882 for

18  personal, non-correctional purposes. CA Civ. C. § 1714.

19  83. Defs. CDCR, ISU routinely undertakes the care, custody of inmate files/materials during

20  incidents and daily living, and by virtue of this owed a duty to Pl. to use ordinary care in their

21  treatment of Pl.'s records and files. Defs. CDCR, ISU breached their duties to Pl. by failing to

22  take reasonable steps to prevent the ongoing and new dissemination images of 19CM-1882

23  after the images were created and in their constructive possession. This includes ISU refusing

24  to take action because they "didn't want to lose their job," and that it "didn't matter because it

25  was already out there;" which directly resulted in ongoing and new dissemination of photos.

26  Defs. CDCR, ISU foresaw that their conduct described above would injure Pl., as shown in

27  their attempts to address similar unauthorized disseminations of information and material and

28  separate from/not 19CM-1882/Pl.

*OSUNA V. BEAM, ET AL*

84. Def. KCDAO routinely undertakes the care and custody of evidence used in felony charges and did so with respect to 19CM-1882. By virtue of this, Def. KCDAO owed a duty to Pl. to use ordinary care in preventing dissemination of any unnecessary images and any other materials from 19CM-1882 once the images and materials were created and/or were within their control. Def. KCDAO, in violation of California Bar Rule 3.6, made extrajudicial statements to a news station/reporter about Pl./19CM-1882 where the station/reporter acknowledged having possession of, described, and shared the photos. KCDAO, as prosecutors of 19CM-1882, accordingly owed a duty to ensure 19CM-1882 photos and material were being managed with reasonable care and in a manner that preserved, rather than endangered its integrity, and to avoid acting in manners that violated the rules of the CA Bar, and had endangered Pl.'s right to a fair trial, and violated the privacy of Pl. and others affected by 19CM-1882.

85. Based on Def. KCDAO's prior request to Kings County Superior Court that the 19CM-1882 incident report/records be sealed to protect Pl.'s right to a fair and impartial trial, and had also formally noted during proceedings that release of the photos would endanger CSP-COR's safety and security, KCDAO knew and acknowledged the foreseeable harm and injury to Pl. and Pl. believed that KCDAO would address the dissemination of 19CM-1882 photos, materials. Def. KCDAO did not take steps, either personally or through any representative agency, to send notices to remove 19CM-1882 photos and materials from online, did not prosecute any publishing, inter alia, of 19CM-1882 materials, or to observe and monitor the security of such materials, when knowing that such disseminations would be harmful, prejudicial, injurious to Pl. and which directly resulted in ongoing and new dissemination of photos and comments.

86. Defs. OIA, AIMS breached their duties to Pl. by failing to take reasonable steps to prevent dissemination of images from 19CM-1882 after the images were created and in CDCR's constructive possession. Defs. OIA, AIMS foresaw that their conduct described above would injure Pl., and left it up to Pl.—a *Coleman* mental health prisoner in SHU/RHU under PC 2602 orders—to try to resolve on his own through litigation, and attempted to cover up for

*OSUNA V. BEAM, ET AL*

[20]

1  employees who used their full, real names and images across social media when publishing

2  slanderous comments about Pl./19CM-1882 and/or had shared other photos and materials

3  from Pl.'s/19CM-1882's file. Defs. OIA, AIMS stated to Pl. that Pl. couldn't be sure these

4  posts/accounts weren't just the public impersonating real CDCR employees and defended

5  Defs. This directly resulted in an ongoing and new dissemination of photos and comments.

6  87. Defs. Zamora, Matta, Jackson owed a duty to Pl. to use ordinary care in their treatment of and

7  access provisions for Pl.'s records/File, including elevating and implementing any digital

8  security measures necessary to ensure preservation and integrity of data therein stored. Defs.

9  Zamora, Matta, Jackson routinely manage inmate records and access privileges and did so

10  with respect to Pl.'s file/19CM-1882 materials. By virtue of this, after being on notice and

11  acknowledging to Pl. that Pl.'s file had been breached by Beam, et al, and that new

12  photos/materials continued to be leaked therefrom through 2024, they refused to elevate the

13  security on Pl.'s file. Pl. sought Defs. Zamora's, Matta's, Jackson's assurances that they

14  would report the misconduct described herein and secure his File. Accordingly, they owed a

15  duty to Pl. to ensure they conducted themselves with reasonable care and in a manner that

16  preserved, rather to follow violated, the confidentiality and privileges of Pl.'s file/19CM-1882

17  records and maintains proper CDCR protocols for reporting misconduct. Based on Defs.

18  Zamora's, Matta's, Jackson's conversations with Pl., they expressed personal knowledge of

19  the possibility of elevating security on Pl.'s File/19CM-1882 materials and willingly chose

20  not to do so because Pl. was not a "celebrity." They refused to even take Pl.'s evidence of

21  ongoing and new threats and inflammatory statements about Pl., including the CSes who

22  stated that Pl. would be attacked, that COs were showing inmates the photos on their phones

23  while making inflammatory, false comments such as that Pl. was a rapist or a baby killer, had

24  HIV and would gas people, leading Pl. to be credibly threatened. They did not take steps,

25  either personally or through a representative, to observe or monitor the access to Pl.'s file,

26  knowing it was harmful and injurious to Pl. or to report misconduct.

27  88. Defs. Hernandez, Espi owed a duty to Pl. to use ordinary care in their treatment of Pl.'s safety

28  assessment. Defs. Hernandez, Espi, as ISU officers, routinely undertake conducting safety

*OSUNA V. BEAM, ET AL*

1    assessments for inmates, and take into account and document all threats, inter alia. By virtue

2    of this, they owed a duty of care to Pl. to exercise ordinary care when conducting his safety

3    assessment. Defs. Hernandez, Espi, when conducting Pl.'s safety assessment, were put on

4    notice through Pl., and CS' statements and reports, inter alia, that Defs. Burnes, Does were

5    showing inmates the 19CM-1882 photos, and that Pl. was being threatened. Defs. Hernandez,

6    Espi refused to take Pl.'s evidence of threats and inflammatory statements about Pl., including

7    the CSes who stated that Pl. would be attacked, and posts by staff that, "The real homies will

8    get tge justice soon" [sic.] Defs. Hernandez, Espi further refused to even document this in

9    Pl.'s safety assessment. Defs. should have foresaw or should have foreseen that their conduct

10    described above would injure and endanger Pl.

11    89. Def. Guillen owed a duty to Pl. to use ordinary care in preventing any unnecessary images

12    from 19CM-1882 to be disseminated for personal, non-correctional purposes (Cal. Civ. Code

13    § 1714), and, as chief deputy warden, to address other misconduct brought to his attention.

14    Def. Guillen refused to take any action, citing, among other reasons, that Defs. Ferrel, Garcia

15    were "retired." Def. Guillen routinely undertakers the addressing of inmate grievances and did

16    so with regard to Pl.'s grievances regarding the dissemination of 19CM-1882 photos,

17    slanderous materials, inter alia. By virtue of this, he owed a duty of care to Pl. to exercise

18    ordinary care in the treatment of Pl.'s grievances. Following Def. Guillen's response to Pl.

19    that he would not/could not act because Def. Ferrel was "retired," Def. Guillen facilitated that

20    a warrant be issued to Ferrel's accounts after Ferrel published evidence for another inmate's

21    felony case. Def. Guillen grossly breached his duty to Pl. by not taking action against Ferrel,

22    et al, but then later taking action against Ferrel for a similar dissemination of CDCR materials,

23    taken/accepted for personal, non-correctional purposes. Def. Guillen foresaw or should have

24    foreseen that his conduct described above would injure Pl.

25    90. As a direct and proximate result of the conduct, actions, and omissions of the Defs. Does,

26    Guillen, Espi, Hernandez, Zamora, Matta, Jackon, OIA, AIMS, CDCR, KCDAO, ISU, Pl.

27    suffered and is suffering from the photos posted with inflammatory, nonfactual, harmful,

28    comments to the public, backed up by Defs. Does, and which has caused inmates and officers

1    to threaten Pl. from believing that Pl. has HIV, and /or believing the inflammatory comments

2    that would get Pl. attacked, and which has caused daily threats against Pl., as is backed up by

3    CSes that told this to ISU. These statements/posts, actions herein cited triggered/trigger Pl.'s

4    qualified mental illnesses, mental health symptoms and worsened, triggered/trigger Pl.'s

5    PTSD symptoms, which led to physical injuries and disassociation, induced psychosis that led

6    to injures of blackouts, self-harm, and triggers/triggered manic depressive episodes due to

7    dealing with consistent, daily threats, and which also affects Pl.'s housing, in an amount to be

8    proven at trial.

9    91. In committing the acts alleged herein, the Defs. Does, ISU, CDCR, OIA, AIMS, Zamora,

10    Matta, Jackson, Hernandez, Espi, Guillen are guilty of oppression, fraud, and/or malice within

11    the meaning of CA Civ. C. § 3294, entitling Pl. to punitive or exemplary damages in an

12    amount appropriate to punish them and to make an example of them to the community.

13    92. Pursuant to CA Gov. C. § 815.2, CDCR and KCDAO are liable for injuries proximately

14    caused by the acts or omission of their employees within the scope of their employment.

15    Upon information and belief, at all times material, Defs. Does, Ferrel, Burnes, Garcia, Beam

16    were employed by CDCR when illicitly entering Pl.'s file and/or by personally accessing the

17    crime scene, and under CDCR's direction and control when they engaged in the conduct

18    described above. These Defs. were able to take photos of 19CM-1882 by virtue of their access

19    to Pl.'s file while on duty, and/or CDCR personnel who shared the photos had access to them

20    by virtue of their employment with CDCR. The acts of Defs. Does, Ferrel, Burnes, Beam,

21    Zamora, Matta, Jackson, Hernandez, Espi, Guillen were committed within the course and

22    scope of their employment, and CDCR is liable for their negligent and wrongful conduct.

23    **FOURTH CAUSE OF ACTION; INVASION OF PRIVACY (AGAINST DOES 1-TBD, FERREL, BURNES, BEAM, GARCIA)**

24    93. Pl has a privacy interest in photos of Pl. during strip search in a mental health area of the

25    prison, and the court-sealed photos and material of his open felony case 19CM-1882.

26    94. Def. Burnes showed inmates the photos on his phone. Def. Defs. Does, Ferrel, Beam publicly

27    disclosed photos of Pl. during his strip search and 19CM-1882's crime scene, in person and/or

28

*OSUNA V. BEAM, ET AL*

1    electronically.

2    95. Defs. have publicly admitted they illicitly entered Pl.'s file: Def. Garcia stated, "I read this

3    crazy fkrs file and got the crime scene photos." [sic.] Def. Ferrel stated that he had "read

4    [Pl.'s] file numerous times."

5    96. Taking and/or sharing photos of an inmate's strip search and or a crime scene for an open

6    case without any correctional purpose is offensive and objectionable to a reasonable person of

7    ordinary sensibilities.

8    97. At the time that Defs. had accessed Pl.'s file, and/or the crime scene, no photos of Pl.'s strip

9    search or 19CM-1882 had been otherwise made public--Pl.'s defense team did not even have

10    access to discovery at the time, and details about the state of the crime scene were not public

11    knowledge. Sharing the graphic facts disclosed by photos served no legitimate public purpose.

12    98. As a direct and proximate result of the conduct, actions, and omissions of the Defs. Does,

13    Ferrel, Beam, Burnes, Garcia, Pl. suffered and is suffering from the photos posted with

14    defamatory, inflammatory, nonfactual, harmful, comments to the public, backed up by Defs.

15    Does, and which has caused inmates and officers to threaten Pl. from believing that Pl. has

16    HIV, and/or believing the inflammatory comments that would get Pl. attacked, and which has

17    caused daily threats against Pl., as is backed up by CSes that told this to ISU. These

18    statements/posts, actions herein cited triggered/trigger Pl.'s qualified mental illnesses, mental

19    health symptoms and worsened, triggered/trigger Pl.'s PTSD symptoms, which led to physical

20    injuries and disassociation, induced psychosis that led to injures of blackouts, self-harm, and

21    triggers/triggered manic depressive episodes due to dealing with consistent, daily threats, and

22    which also affects Pl.'s housing, in an amount to be proven at trial.

23    99. Pursuant to CA Gov. C. § 820(a), Defs. Does, Ferrel, Beam, Burnes, Garcia are liable for

24    injuries caused by their acts or omissions to the same extent as a private person.

25    100. In committing the acts alleged herein, the Defs. Does, Ferrel, Beam, Burnes are guilty of

26    oppression, fraud, and/or malice within the meaning of CA Civ. C. § 3294, entitling Pl. to

27    punitive or exemplary damages in an amount appropriate to punish Defs. Does, Ferrel,

28    Beam, Burnes, Garcia and to make an example of them to the community.

*OSUNA V. BEAM, ET AL.*

1    when they engaged in the conduct described above of illicitly entering Pl.'s file/19CM-1882

2    records. Def. Does, Burnes, Beam, Ferrel, Garcia were able to illicitly access Pl.'s file, take

3    any content therefrom and/or take photos of 19CM-1882 crime scene and investigation by

4    virtue of their access to Pl.'s file and/or access to the crime scene while on duty, and Does

5    who took and/or shared the photos had access to them by virtue of the employment with the

6    Department and the relationships and/or from any relationships therein formed while

7    employed. The acts of Ferrel, Garcia, Cavanaugh, Does in making inflammatory and/or

8    nonfactual statements used in material that described and/or showed the photos, and/or

9    described 19CM-1882/Pl. The acts of the Doe Defs. were committed within the scope of

10    their employment, and CDCR is liable for the Doe Defs.' negligent and wrongful conduct.

11                                **C. PRAYER FOR RELIEF**

12    WHEREFORE, Pl. respectfully requests that the Court grant the following relief:

13    **A. Issue declaratory judgement statements;**

14    **B. Issue compensatory damages:**

15    a. For compensatory damages in an amount to be proven at trial.

16    b. For all nominal damages.

17    c. For any additional general and or specific, consequential and or incidental damages in an

18        amount to be proven at trial.

19    d. For all punitive damages in an amount appropriate to punish the Def. and make an example of

20        the Def. to the community.

21    e. For all interests, where/as permitted by law.

22    f. Disgorging of all profits from sale of 19CM-1882 photos/materials.

23    **C. Issue injunctions ordering:**

24    g. For an order to remove from all platforms the photos/materials of 19CM-1882, including any

25        derivatives, licenses, inter alia, permanently.

26    h. For an order to remove any defamatory materials, threats, by Defs. cited herein about Pl.,

27        and/or purporting to provide details about 19CM-1882, to be removed permanently.

28    **D. Grant any such other relief as it may appear that Pl. is entitled.** Submitted on May 20,25

                                            [25]                    OSUNA V. BEAM, ET AL