

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

JUN 29 2026

Jamie Osuna BD0868
CSP-COR PO Box 8800
Corcoran, CA 93212,
                    Plaintiff,
        v.
Erik BEAM; Joseph BURNES; Maria
GARCIA; Crescent CAVANAUGH; Art
GUILLEN; Tammy CAMPBELL; R.
BROOMFIELD; Sarah GATES; C.
JACKSON; M. HERNANDEZ; R.
ESPINO/ESPI; J. GONZALES; and DOES
1-10,
                    Defendants.

No. 1:25-cv-00772-JLT-BAM

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
DEPUTY CLERK

FIRST AMENDED COMPLAINT FOR
DAMAGES, COMPENSATORY AND
INJUNCTIVE RELIEF

42 U.S.C. § 1983 for violations of:

1. **FOURTEENTH AMENDMENT
   INFORMATIONAL PRIVACY /
   SUBSTANTIVE DUE PROCESS**
2. **EIGHTH AMENDMENT DELIBERATE
   INDIFFERENCE TO A SUBSTANTIAL
   RISK OF SERIOUS HARM**

**DEMAND FOR JURY TRIAL**

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

2. Venue is proper in the Eastern District of California under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this district.

## II. INTRODUCTION

3. Plaintiff Jamie Osuna is a CDCR prisoner and the defendant in Kings County Superior Court case no. 19CM-1882, a pending pretrial, capital-eligible case arising from events inside CSP-Corcoran in March 2019.

4. Because 19CM-1882 occurred inside CSP-Corcoran, CDCR investigative and related staff were responsible for collecting, storing, safeguarding, limiting access to, and preserving photographs, investigative materials, and related records created during and after the investigation.

5. Plaintiff alleges 19CM-1882 photographs and related materials were treated as confidential or restricted. Plaintiff further alleges he was not allowed to possess the photographs because release or possession of the photographs, even by Plaintiff, was represented to create institutional-

1

security risks, including prison blind spots and threats to CSP-Corcoran safety and security.

6. Despite those restrictions, Plaintiff later learned that 19CM-1882 photographs, Plaintiff-identifying file materials, medical or mental-health-setting images, and related nonpublic CDCR-controlled information were accessed, copied, transmitted, displayed to inmates, publicly circulated, described, traded, sold, monetized, or otherwise disseminated outside authorized channels. These materials are referred to in this complaint as "Plaintiff Materials."

7. Plaintiff alleges that some Plaintiff Materials could only have been obtained through official-access pathways, including C-file/SOMS, CCHCS/EHR records, ISU/IGI files, chain-of-custody records, CDCR-held evidence, staff-held copies, personal-device copies made from official sources, or other CDCR-controlled repositories.

8. Plaintiff alleges that Defendants BEAM, BURNES, GARCIA, Direct-Access DOES personally accessed, possessed, transmitted, displayed, copied, received, retained, or disclosed 19CM-1882 photographs, Plaintiff file materials, or related nonpublic CDCR-controlled information.

9. Plaintiff alleges that Defendant CAVANAUGH participated in staff-linked public commentary concerning Plaintiff that foreseeably increased Plaintiff's custodial safety risk. Plaintiff alleges that Defendants GUILLEN, CAMPBELL, BROOMFIELD, GATES, JACKSON, HERNANDEZ, ESPINO/ESPI, GONZALES, and Post-Notice DOES received actual notice of unauthorized access, circulation, threats, mental-health harm, and file-security danger, but failed to take reasonable available steps within their authority to document, refer, preserve, mitigate, protect, or consider the risk.

10. Plaintiff does not bring this case merely because grievances were denied, because Defendants held supervisory titles, or because every Defendant caused the initial leak. Plaintiff challenges direct unauthorized access or disclosure, staff-linked public risk creation, and post-notice refusals to take reasonable available mitigation steps after actual knowledge of continuing leak-related safety and mental-health risks.

11. Defendants are joined because their conduct arises from the same series of events: official-access possession or circulation of 19CM-1882 materials, staff-held or staff-displayed copies, staff-linked public inflammatory commentary, resulting threats and mental-health harm, and

refusals to document, preserve evidence concerning, refer, or mitigate the same continuing leak-related privacy and safety risk.

### III. PARTIES

12. Plaintiff Jamie Osuna is and was at all relevant times a CDCR prisoner.

13. Plaintiff sues each Defendant in individual capacity for damages, including compensatory, nominal, and punitive damages where permitted. Plaintiff also seeks prospective injunctive relief against BEAM, BURNES, GARCIA, and Direct-Access DOES 1-5 in individual capacity, and, to the extent any such Defendant is a current CDCR or CCHCS official, in official capacity solely to prevent further unauthorized possession, display, copying, transmission, retention, posting, sale, trade, monetization, public filing, or disclosure of nonpublic CDCR-derived 19CM-1882 materials or Plaintiff-identifying confidential file, medical, mental-health, strip-search, body-privacy, injury-inspection, or custodial information within that Defendant's possession, custody, control, or present official authority. Plaintiff does not seek damages from the State of California, CDCR, CCHCS, or any Defendant in official capacity.

14. Defendant Erik BEAM was, at relevant times, a CDCR lieutenant at Salinas Valley State Prison.

15. Defendant Joseph BURNES was, at relevant times, a CDCR sergeant at CSP-Corcoran.

16. Defendant Maria GARCIA was, at relevant times, a CDCR correctional officer or employee at CSP-Corcoran.

17. Defendant Crescent CAVANAUGH was, at relevant times, a CDCR correctional officer at CSP-Sacramento.

18. Defendant Art GUILLEN was, at relevant times, a CSP-Corcoran Associate Warden, Chief Deputy Warden, or senior official.

19. Defendant Tammy CAMPBELL was, at relevant times, Warden of CSP-Corcoran.

20. Defendant Ron BROOMFIELD was, at relevant times, Director of the Division of Adult Institutions or a CDCR official involved in DRB, classification, housing, safety, or institutional review.

3

21. Defendant Sarah GATES was, at relevant times, a CDCR/CCHCS health-care policy, privacy, risk-management, supervisory, or administrative official.

22. Defendant Chris JACKSON was, at relevant times, a correctional counselor at CSP-Corcoran.

23. Defendant M. HERNANDEZ was, at relevant times, an ISU officer at CSP-Corcoran.

24. Defendant R. ESPINO/ESPI was, at relevant times, an ISU officer at CSP-Corcoran.

25. Defendant J. GONZALES was, at relevant times, an ISU officer at CSP-Corcoran.

26. DOES 1-5 are CDCR employees, agents, contractors, or persons acting jointly with CDCR employees who directly participated in the alleged transmission, receipt, forwarding, possession, display, retention, or disclosure of 19CM-1882 photographs, Plaintiff-identifying file materials, or related protected information involving BEAM, BURNES, or GARCIA.

27. DOES 6-10 are CDCR officials not otherwise named who personally received notice of the BEAM/BURNES/GARCIA-related direct access, display, transmission, staff-held-copy issue, CAVANAUGH/GARCIA-related staff-linked public commentary, or related threat information, and personally failed to document, preserve, refer, or take reasonable steps within their authority.

28. Plaintiff will seek leave to amend when DOE identities are discovered.

<h3 style="text-align:center">IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES</h3>

29. Plaintiff timely exhausted available administrative remedies concerning the unauthorized disclosure, staff-linked commentary, safety-risk, file-security, and post-notice refusal issues alleged in this complaint, including grievance/appeal log nos. 612544 and 613992 and CSP-SAC granted Plaintiff's grievance concerning CAVANAUGH's public post. CDCR also combined, rerouted, or screened related matters into single or existing grievances during processing.

<h3 style="text-align:center">V. FACTUAL ALLEGATIONS</h3>

**A. Restricted Materials, File Security, and Prior Breach Notices**

30. The events underlying Plaintiff's Kings County case no. 19CM-1882 occurred inside CSP-Corcoran.

31. CDCR filed for a protective order regarding 19CM-1882 materials with the Kings County

4

Superior Court.

32. Plaintiff alleges the 19CM-1882 photographs and related materials were treated as confidential or restricted in Plaintiff's criminal case. Plaintiff further alleges the prosecution represented that release or possession of the photographs, even by Plaintiff, created institutional-security risks because the photographs showed prison blind spots and could threaten CSP-Corcoran safety and security if released outside controlled channels.

33. CDCR implemented enhanced restrictions on Plaintiff's C-file, citing media interest in 19CM-1882. These restrictions limited access to management-level personnel and required logging of staff identity and access purpose.

34. Plaintiff received CDCR breach notifications concerning unauthorized online disclosure of Plaintiff's dental records and, separately, Plaintiff's photograph and housing information, and was informed that the material had been removed from online. CSP-SAC also granted Plaintiff's grievance concerning CAVANAUGH'S stigmatizing post to former staff's YouTube video about Plaintiff/19CM-1882, and that post was removed from online.

35. Plaintiff did not receive comparable written breach notice, audit findings, investigation results, clawback notice, takedown notice, staff-discipline notice, mitigation notice, or remedial notice concerning later unauthorized access to and dissemination of 19CM-1882 photographs and related materials.

36. Plaintiff did not authorize BEAM, BURNES, GARCIA, CAVANAUGH, any DOE Defendant, or any CDCR/CCHCS employee, agent, or source to receive, retain, possess, disclose, publish, sell, promote, or monetize Plaintiff Materials.

**B. Removal of File Security and Later Leaks**

37. Plaintiff learned from inmates and other sources, including ISU/IGI confidential-source reports or documentation, that 19CM-1882 crime-scene photographs were circulating online and/or being shown to inmates by officers, including on the officers' cellphones.

38. Plaintiff filed a grievance concerning that leak. During review or processing, the grievance was transferred to CSP-Corcoran for review.

39. Later, non-party correctional counselor Zimora told Plaintiff that the heightened security lock

5

was no longer on Plaintiff's C-file/SOMS. Plaintiff was never notified when, why, or by whom the heightened security was removed or released. Plaintiff raised the issue with non-party counselors Matta and Zimora, showed/attempted to show documentation of breaches and public dissemination of materials from Plaintiff's file, and requested restoration of heightened security. Matta and Zimora refused or disagreed, asserting that Plaintiff did not meet a "celebrity" type criterion despite the reported breaches and public circulation of Plaintiff's file materials.

40. During Plaintiff's next CDCR committee proceedings, Plaintiff asked that heightened security be restored to his file to stop further access and dissemination.

41. Plaintiff told committee staff that confidential 19CM-1882 materials were online, that staff were publicly talking about going into Plaintiff's file, that inmates were using the materials and comments to threaten Plaintiff, and that Plaintiff's file needed to be re-secured.

42. Plaintiff attempted to show proof of the leak, including inmate and other online statements reflecting public circulation of 19CM-1882 materials.

43. Plaintiff also told prison/mental-health staff that the leak was causing severe emotional distress, worsening mental-health symptoms, self-injurious behavior, and repeated crisis placements.

44. After this, Plaintiff learned that additional 19CM-1882 photographs had been publicly posted online and that earlier leaks remained online.

45. One newly circulated image showed Plaintiff's full face in a prison mental-health or medical setting during a strip search, injury inspection, medical observation, mental-health observation, safety review, investigation, or related institutional documentation after the 19CM-1882 incident.

46. Plaintiff alleges that image was created, possessed, or retained by ISU and was accessible through CDCR-controlled systems or files.

47. The public dissemination of that image exposed Plaintiff as a mental-health or medical patient in a vulnerable setting, exposed identity/body privacy and injury-inspection context, and exposed medical, mental-health, or injury-related information not intended for public release.

48. Plaintiff alleges the same official-access pathway existed even where later display, copying, or transmission occurred through a personal phone, personal email account, social-media account,

cloud account, or non-CDCR storage, because the materials originated from CDCR employment, official records, staff-held copies, staff status, or official-access repositories.

**C. Defendant BEAM's Alleged Transmission of 19CM-1882 Photographs**

49. Plaintiff later learned through the public federal-court docket in E.D. Cal. No. 1:21-cv-01349-LHR-BAM that a second amended complaint alleged Erik BEAM, a CDCR lieutenant who worked at Salinas Valley State Prison rather than CSP-Corcoran, had sent 19CM-1882 photographs through private and work emails.

50. Plaintiff alleges BEAM was not working at CSP-Corcoran when the 19CM-1882 incident occurred, was not assigned to Plaintiff, was not assigned to CSP-Corcoran, was not assigned to the 19CM-1882 investigation, and was not an investigator on Plaintiff's case.

51. Plaintiff does not know of any assigned duty, investigative role, court order, medical purpose, custodial responsibility, housing responsibility, security assignment, or documented need-to-know requiring a Salinas Valley State Prison lieutenant to transmit 19CM-1882 photographs to the recipients described in the public filings.

52. Plaintiff further alleges that the public filing stated BEAM transmitted the photographs or materials with statements including "Work can always get worse," or similar language.

53. Plaintiff later learned from BEAM's answer in E.D. Cal. No. 1:21-cv-01349-LHR-BAM, Doc. 73, filed October 1, 2025, that BEAM admitted he had shared a "limited number of photographs" and asserted that he had done so for legitimate penological purposes.

54. Plaintiff disputes that asserted purpose because BEAM did not work at CSP-Corcoran, was not assigned to Plaintiff or 19CM-1882, was not an investigator on Plaintiff's case, and CDCR never gave Plaintiff notice identifying any documented need-to-know basis for BEAM's possession or transmission of those photographs.

55. Plaintiff learned of BEAM's actions through the public docket, not from CDCR, ISU, OIA, AIMS, any breach notice, or any written notification to Plaintiff.

**D. Defendant BURNES's Alleged Cellphone Display to Inmates**

56. Plaintiff was told by an inmate that while the inmate went through R&R, Defendant BURNES showed that inmate crime-scene photographs from Plaintiff's case on BURNES's cellphone.

57. Plaintiff alleges this was at least the third inmate who told Plaintiff that BURNES or officers connected to BURNES showed inmates 19CM-1882 photographs on cellphones or personal devices.

58. Plaintiff alleges BURNES possessed, displayed, or showed one or more 19CM-1882 photographs to inmates.

59. Plaintiff alleges BURNES's display caused or contributed to inmates believing that CDCR staff were circulating Plaintiff's case materials and that staff-approved or staff-supplied inflammatory narratives about Plaintiff were true. Plaintiff further alleges inmates threatened Plaintiff's life while referencing the photographs, staff-linked narratives, and paperwork Plaintiff had grieved or complained was false or fabricated by the same core officer group.

60. Plaintiff alleges BURNES's display contributed to threats, harassment, inmate confrontation, and Plaintiff's fear that staff-held copies continued to exist outside authorized systems.

**E. Defendant GARCIA's Alleged File Access and Public Statements**

61. Plaintiff learned of public posts by persons identifying themselves as CDCR employees stating or implying they had entered Plaintiff's file and viewed or obtained 19CM-1882 photographs.

62. One public post attributed to CDCR employee GARCIA stated, in substance: "Good one, Hector! I read this crazy fkers file and got the crime scene photos." [sic] Plaintiff alleges the post was published in the comment section of a former CDCR officer's video concerning Plaintiff and 19CM-1882. Plaintiff pleads the statement as evidence of claimed file access, claimed possession or viewing of crime-scene photographs, and public file-based commentary concerning Plaintiff.

63. In a separate news thread, the account stated, "I believe he gets sexual gratification from the act of taking someone's life." Plaintiff alleges this was a sexualized, file-framed assertion about Plaintiff that was presented from an asserted CDCR-insider position.

64. Plaintiff does not plead GARCIA's statements to prove their truth or accuracy. Plaintiff pleads them to show claimed file access, claimed use of official reports and photographs, alleged source pathway, public amplification, notice to officials, and the spread of an inflammatory sexualized narrative that Plaintiff alleges contradicted known case facts, including that Plaintiff

8

was not charged with rape or a sex offense in 19CM-1882 or any other case.

65. Plaintiff has preserved the complete public comment thread but does not reproduce its additional graphic descriptions because they are unnecessary to state the claims alleged here.

66. GARCIA's public statements caused or contributed to Plaintiff's fear that CDCR employees were entering his file, obtaining photographs, and using Plaintiff's confidential records for public humiliation, sexualized commentary, inflammatory narratives, and inmate-facing commentary. Plaintiff alleges GARCIA's statements contributed to the sex-based narrative later used by inmates to threaten or otherwise target Plaintiff inside custody.

**F. Defendant CAVANAUGH's Public Staff-Linked Statements and Safety Risk**

67. Defendant CAVANAUGH posted public comments concerning Plaintiff in the same public video comment thread in which Defendant GARCIA made file-access and 19CM-1882-related statements about Plaintiff.

68. In that thread, CAVANAUGH identified Plaintiff as having been "one of my inmates," discussed Plaintiff's prior custodial placement, and made stigmatizing and inflammatory statements concerning Plaintiff, including statements that Plaintiff had assaulted staff with blood and was HIV-positive.

69. Plaintiff does not plead CAVANAUGH's statements to prove the truth of any medical, custodial, or disciplinary matter. Plaintiff pleads them to show staff-linked public commentary, asserted insider status, the spread of inflammatory narratives about Plaintiff, notice to CDCR officials, and the foreseeable custodial safety risk created when a CDCR-affiliated person publicly labels Plaintiff with stigmatizing medical and assaultive-staff allegations.

70. Plaintiff alleges CAVANAUGH's statements were made in the same public online setting as GARCIA's statements, on content published by the same former CDCR lieutenant whose content and audience were already connected to Plaintiff's grievances, staff-linked commentary, and public dissemination of Plaintiff-related materials.

71. Plaintiff grieved CAVANAUGH's statements and reported that CDCR-affiliated public commentary about Plaintiff was creating or increasing custodial threats, harassment, and safety risk. CDCR granted Plaintiff's grievance concerning CAVANAUGH's post, and the post was

removed.

72. Plaintiff alleges the removal of CAVANAUGH's post confirmed that the post existed and required corrective action, but CDCR did not meaningfully address the resulting safety risk, did not include the staff-linked commentary pattern in Plaintiff's threat assessment, and did not treat CAVANAUGH's post together with GARCIA's related comments from the same video thread.

73. Plaintiff alleges inmates later repeated the same or similar stigmatizing and inflammatory narratives when threatening or targeting Plaintiff, including narratives connected to medical status, staff assaults, sex-based accusations, and staff-linked file or case commentary.

74. Plaintiff alleges CAVANAUGH is not sued as a direct photo-access defendant, but for staff-linked public commentary in the same video/comment-thread environment as GARCIA's file-access statements, which CDCR later granted a grievance about and which Plaintiff alleges contributed to the same custodial threat narrative

**G. Public Circulation and Notice**

75. Plaintiff learned that 19CM-1882 materials were being reposted, described, traded, sold, monetized, and used in podcasts, social-media posts, websites, and other public internet content.

76. Some public posts stated or implied that the materials came from CDCR staff, Plaintiff's file, CDCR-held copies, staff-held copies, personal-device copying or display, or some combination of those sources.

77. Plaintiff was shocked by the public spread of these materials because the photographs were treated as confidential in the criminal case, Plaintiff himself was not allowed to possess them based on institutional-security concerns, and CDCR itself had sought a protective order on 19CM-1882 materials.

78. Plaintiff does not challenge lawful commentary, opinion, reporting, or discussion based solely on public court records. Plaintiff challenges unauthorized official-access possession, copying, display, transmission, retention, staff-to-inmate display, and downstream staff-held copies of nonpublic CDCR-controlled 19CM-1882 materials and Plaintiff-identifying confidential file information.

10

**H. Defendant GUILLEN's Notice, Authority, and Refusal to Act**

79. Plaintiff submitted grievances, complaints, links, captures, and supporting evidence reporting that 19CM-1882 photographs and related materials were being accessed, circulated, displayed, sold, or publicly discussed by current or former CDCR-affiliated persons.

80. Defendant GUILLEN investigated, reviewed, or made decisions about what actions or mitigation to take concerning Plaintiff's grievances or complaints about dissemination of 19CM-1882 materials, including materials associated with former staff, GARCIA-type statements, CAVANAUGH-type statements, and staff-linked access to Plaintiff's file.

81. Plaintiff alleges GUILLEN was personally informed that the leak involved CDCR-controlled or CDCR-derived materials; that current or former CDCR personnel had publicly claimed file access, that inmates were using leaked materials and custody-originated inflammatory narratives to threaten Plaintiff, and that Plaintiff wanted CDCR to document, investigate, secure, audit, mitigate, seek removal of, or preserve evidence concerning the breach.

82. In the materials GUILLEN reviewed, Plaintiff requested that CDCR document the leak, preserve evidence concerning access to and disclosure of 19CM-1882 materials, refer the matter to investigative channels, seek removal or platform preservation where available, review file-access history, and take steps to stop further staff-linked circulation of 19CM-1882 materials.

83. GUILLEN rejected or denied those requests, or allowed them to be rejected, on grounds including that some actors were retired, that CDCR lacked jurisdiction, that the conduct was outside the grievance process, or that no corrective action was available.

84. Separately, Plaintiff learned that in another CSP-Corcoran/Kings County inmate matter, identified by Plaintiff as report no. C-COR-417-24-C and involving Bobby Dominguez-related materials, GUILLEN caused or participated in legal-process or account-related enforcement activity directed at a former CDCR employee's online accounts after that employee allegedly monetized or disseminated materials from that separate Corcoran open-felony case. The former employee publicly described the process as involving "Corcoran ISU and CDW Art Guillen" and stated that Corcoran ISU contacted him about the Dominguez materials available on his public platforms. Plaintiff alleges this for notice, practical ability, and comparison to

11

GUILLEN's response after Plaintiff reported circulation of 19CM-1882 materials.

85. Plaintiff alleges no comparable referral, preservation request, takedown request, legal-process step, account-related step, or copy-control step was taken for Plaintiff's 19CM-1882 materials after Plaintiff gave GUILLEN notice that the materials and file information were circulating and causing serious safety and mental-health harm.

**I. Defendant CAMPBELL's Review, Notice, and Final Refusal**

86. Defendant CAMPBELL was Warden of CSP-Corcoran at relevant times.

87. Plaintiff alleges CAMPBELL personally reviewed Plaintiff's statements, evidence, grievances, appeals, attachments, and institutional records concerning the public circulation of 19CM-1882 materials, the removal or release of heightened C-file/SOMS security, staff-linked file access, inmate threats, staff-linked public comments, and the Plaintiff-identifying mental-health or medical-setting image. Plaintiff further alleges those materials informed CAMPBELL that the 19CM-1882 materials, Plaintiff-identifying information, and related records originated from, were maintained within, or were controlled through CSP-Corcoran, CCHCS, ISU/IGI, SOMS, C-files, or other CDCR-controlled repositories.

88. Plaintiff alleges those materials informed CAMPBELL that Plaintiff sought restoration of heightened C-file/SOMS security, documentation of the leak, an audit or access review, breach notice, mitigation, referral, preservation, copy-control, or protective action.

89. Plaintiff alleges CAMPBELL issued, signed, approved, adopted, or allowed a final denial or refusal after reviewing Plaintiff's statements and evidence.

90. CAMPBELL did not restore heightened security, request or require an audit, place or require a notation in Plaintiff's file, refer the matter for breach review, require preservation, require copy-control steps, or otherwise require reasonable mitigation.

91. CAMPBELL's final refusal left Plaintiff's file insecurity and public circulation unaddressed after actual notice of the continuing privacy, safety, and mental-health risk.

**J. Defendant BROOMFIELD's DRB / Classification Refusal**

92. Defendant BROOMFIELD personally participated in or exercised authority over DRB, classification, housing, safety, or security review involving Plaintiff.

93. During DRB proceedings or related security and classification review, Plaintiff raised staff online activity, staff-linked disclosures, public circulation of confidential 19CM-1882 materials, officer-linked threats, false sex-offense allegations, inmate targeting, and known data-breach insecurity affecting Plaintiff's C-file, SOMS records, and other CDCR-controlled materials. Plaintiff also requested restoration of the heightened C-file/SOMS restrictions originally initiated at CHCF in or about April 2019, or comparable action to address the security classification and accessibility of those materials.

94. Plaintiff alleges BROOMFIELD explicitly acknowledged Plaintiff's media exposure, case notoriety, and related safety concerns during DRB, classification, housing, or safety-review proceedings. BROOMFIELD did not document those concerns as safety factors, refer them for breach or investigative review, or require consideration of the staff-linked dissemination and threat information in Plaintiff's safety, housing, classification, or file-security review.

**K. Defendant GATES's Review, Notice, and Final Refusal**

95. Defendant GATES had authority, responsibility, or practical ability concerning mental-health policy, risk management, patient privacy, institutional mental-health documentation, or response to unauthorized dissemination of mental-health or medical-setting information.

96. Plaintiff alleges GATES reviewed Plaintiff's statements, evidence, grievance materials, healthcare/privacy materials, or related documentation concerning the publicly circulated image showing Plaintiff's full face in a prison mental-health or medical setting during a strip search, injury inspection, medical observation, mental-health observation, safety, investigation, or related institutional documentation after the 19CM-1882 incident.

97. Plaintiff alleges those materials informed GATES that the image disclosed more than Plaintiff's identity or involvement in 19CM-1882. It disclosed Plaintiff's presence in a mental-health or medical setting, vulnerable patient status, privacy during a strip search or injury inspection, and medical/mental-health or injury-related information not intended for public release.

98. Plaintiff alleges the materials reviewed by GATES also informed her that the image was causing Plaintiff safety harm, threats, mental-health deterioration, fear of further dissemination, and continuing distress inside custody.

13

99. Plaintiff alleges GATES issued, approved, adopted, or allowed a final denial or refusal after reviewing Plaintiff's statements and evidence.

100. GATES did not refer the matter for breach review, require mitigation, request preservation or access review, support takedown or confidentiality response, require documentation, require copy-control steps, or take reasonable action within her authority to address the continuing public disclosure.

101. After GATES's refusal, Plaintiff's mental-health, medical-setting, strip-search, injury-inspection, and vulnerable-patient-setting information remained publicly circulated and un-remediated.

**L. Defendant JACKSON's Refusal to Receive Documentation or Raise File Security**

102. Plaintiff informed Defendant JACKSON that 19CM-1882 photographs, staff comments, and public materials were online and that current or former CDCR employees were making statements implying file access.

103. Plaintiff attempted to show JACKSON documentation, links, screenshots, descriptions, or other proof of the leak and related threats.

104. Plaintiff asked JACKSON to help raise or restore file security, document the breach risk, report the misconduct, or refer the matter to staff who could act.

105. After Plaintiff described the leaked materials, threats, and worsening mental-health symptoms, JACKSON refused to accept Plaintiff's documentation, refused to refer the file-security issue, disclosure concerns, and related threat information to staff with authority to review them, and failed to report the alleged misconduct through available institutional channels.

**M. Defendants M. HERNANDEZ and ESPINO/ESPI's Safety-Assessment Refusals**

106. ISU officers HERNANDEZ and ESPINO/ESPI completed or participated in a safety assessment used for Plaintiff's housing, DRB, classification, or safety review.

107. Plaintiff informed HERNANDEZ and ESPINO/ESPI that 19CM-1882 photographs and related staff-linked comments were online, that inmates were threatening Plaintiff, and that public comments and false, inflammatory staff-linked statements were being used to falsely call Plaintiff a rapist, baby killer, HIV-positive, or otherwise target him.

14

108. Plaintiff further informed HERNANDEZ and ESPINO/ESPI that a CDCR Form 114 existed which Plaintiff alleges contained false information identifying Plaintiff as gang-affiliated, assigning a gang moniker, omitting relevant mental-health background, and falsely associating Plaintiff with sex-offense-related case factors. Plaintiff alleges the CDCR Form 114 was created in 2020, withheld from Plaintiff for years, and later surfaced during discovery in separate litigation.

109. Plaintiff attempted to provide HERNANDEZ and ESPINO/ESPI documents, links, printouts, statements, reports, and other materials showing that inmates were referencing leaked photographs, public comments, staff-linked false information, alleged officer cellphone displays of 19CM-1882 photographs including by BURNES, and allegedly false paperwork or false information concerning Plaintiff in a manner that increased the risk of assault.

110. Plaintiff told HERNANDEZ and ESPINO/ESPI that ISU had confidential-source or other internal information reporting that correctional officers were showing inmates 19CM-1882 photographs and making false, inflammatory comments about Plaintiff that would get him attacked or encourage attack.

111. Plaintiff told HERNANDEZ and ESPINO/ESPI that those reports matched threats and information Plaintiff was receiving from inmates, including threats referencing the photographs, custody-originated inflammatory narratives, displayed materials, stigmatizing claims repeated after CDCR granted grievances concerning CAVANAUGH's post, and GARCIA's inflammatory posts, and the falsified, contradictory, or misleading CDCR Form 114s and other institutional paperwork that inmates were using or referencing to justify threats or violence against Plaintiff. Plaintiff further told HERNANDEZ and ESPINO/ESPI that ISU's own confidential-source information corroborated the threat risk, including reports that Plaintiff was being set up for attack and would have to fight to defend himself.

112. Plaintiff also provided information concerning a social-media post attributed to Robert Gonzales or an account using that name which, in substance, warned of or anticipated violence against Plaintiff. Plaintiff alleges the post appeared near the time of Plaintiff's anticipated release from restricted housing, coincided with threat information Plaintiff was

receiving from inmates, and was associated in Plaintiff's understanding with a CDCR employee or affiliate. Plaintiff attempted to provide copies or documentation of the post and related threat information to ISU personnel, but the information was not incorporated into Plaintiff's threat assessment or safety review. After Plaintiff attempted to provide this material and ISU refused to take or document it, the post and account disappeared.

113. During the same safety-assessment process, HERNANDEZ and ESPINO/ESPI selectively accepted or used source comments regarding other matters, including a false statement that Plaintiff wanted to remain at CSP-Corcoran contained in the same documents or reports as the omitted photo-display, inflammatory-comment, and set-up/threat information.

114. HERNANDEZ and ESPINO/ESPI did not include the information about BURNES, staff-linked photo display, false sex-offense narratives, inmate threats, the disputed Form 114, the social-media threat information, or related inflammatory narratives in the final safety assessment or report when the intended purpose of the assessment was for use in DRB, housing, classification, or safety-review proceedings involving Plaintiff. HERNANDEZ and ESPINO/ESPI also refused to take Plaintiff's documents, refused to include the staff-linked threats and photo-circulation information in Plaintiff's safety assessment, and refused to document that information as part of Plaintiff's threat, housing, and safety risk.

**N. Defendant GONZALES's Reliable-Source Notice**

115. Plaintiff alleges Defendant GONZALES received reliable confidential-source information, internal notice, or reports that officers were showing inmates 19CM-1882 photographs on phones and making inflammatory statements that threatened Plaintiff's life and safety.

116. Plaintiff further alleges GONZALES was associated with, responsible for, or had notice of a social-media post attributed to Robert Gonzales or an account using that name which, in substance, warned of or anticipated violence against Plaintiff near the time of Plaintiff's anticipated release from restricted housing to only a specific yard/yards.

117. Plaintiff alleges GONZALES knew the information concerned staff-linked dissemination of confidential case materials and an active safety threat, and that the information could be documented, referred, preserved, or submitted for protective or investigative review.

16

118. Plaintiff alleges GONZALES refused or failed to document, refer, preserve, or act on that information, leaving the risk unaddressed.

**O. Harms and Injuries**

119. The public circulation of Plaintiff Materials exposed Plaintiff to humiliation, fear for safety, exposure as a mental-health or medical patient in a vulnerable setting, severe emotional distress, worsening mental-health symptoms, and continuing fear that confidential CDCR-controlled materials remain outside lawful channels.

120. Plaintiff has been threatened and harassed by inmates and staff who repeated or referenced public materials, GARCIA's sexualized file-based comments, CAVANAUGH-type stigmatizing statements, BURNES's alleged cellphone display of 19CM-1882 photographs, DOE/staff-linked access to 19CM-1882 materials, and related inflammatory narratives.

121. Plaintiff alleges he has serious mental-health diagnoses and symptoms, including PTSD-related symptoms, psychosis or decompensation symptoms, dissociation, flashbacks, blackouts, self-harm, and other severe symptoms triggered or worsened by constant threats, sexualized and sex-based accusations, public circulation, and staff refusal to secure or document the issue.

122. Plaintiff alleges that after the threats and leak-related harassment, he suffered self-inflicted injuries, head-banging, headaches, cuts, deep gashes, scarring, crisis placements, and worsening mental-health symptoms.

123. As a result of the unauthorized access, disclosure, display, staff-linked public risk creation, and post-notice refusals alleged above, Plaintiff suffered concrete injuries separate from mental or emotional distress, including loss of confidentiality and control over protected information after actual disclosure; exposure of medical, mental-health, body-privacy, vulnerable-setting, and Plaintiff-identifying file materials to inmates, staff, or the public; increased custodial safety risk; sexualized and sex-based targeting; reputational injury within custody; housing and safety-assessment effects; physical injuries; and physical manifestations sufficient to satisfy 42 U.S.C. § 1997e(e). Plaintiff also seeks nominal and punitive damages for constitutional injuries where permitted by law.

17

**VI. CLAIM ONE: FOURTEENTH AMENDMENT INFORMATIONAL PRIVACY /
SUBSTANTIVE DUE PROCESS**

*Against Defendants BEAM, BURNES, GARCIA, CAVANAUGH, Direct-Access DOES 1-5*

124. Defendants BEAM, BURNES, GARCIA, CAVANAUGH, and Direct-Access DOES 1-5 acted under color of state law by using CDCR employment, staff status, official access, official records, staff-held copies, or CDCR-derived materials to obtain, possess, transmit, display, retain, disclose, or publicly discuss Plaintiff's protected information or materials.

125. Plaintiff had a protected privacy interest in nonpublic medical, mental-health, strip-search, body-privacy, injury-inspection, vulnerable-setting, C-file/SOMS, CCHCS/EHR, ISU/IGI, custodial, and case-related information, including restricted 19CM-1882 photographs or materials that officials treated as confidential, restricted from Plaintiff's possession for security reasons, and did not authorize for public circulation, staff-to-inmate display, personal-device retention, sale, trade, or online publication.

126. BEAM obtained, possessed, transmitted, emailed, shared, or caused dissemination of nonpublic 19CM-1882 photographs or related CDCR-controlled materials without Plaintiff's consent or public-release authorization. Plaintiff alleges BEAM had no documented need-to-know because he was assigned to Salinas Valley State Prison, was not assigned to CSP-Corcoran, Plaintiff, or 19CM-1882, and was not an investigator on Plaintiff's case.

127. BURNES possessed, displayed, or showed one or more 19CM-1882 photographs to inmates on a cellphone or personal device outside any documented institutional purpose.

128. GARCIA accessed, obtained, viewed, described, or publicly discussed Plaintiff's file, official reports, and 19CM-1882 photographs for personal, public, humiliating, or non-correctional purposes.

129. CAVANAUGH publicly identified Plaintiff as a former inmate under his custody, publicly discussed Plaintiff's custodial history, and made statements concerning Plaintiff's medical status and alleged conduct toward staff. Plaintiff alleges those statements were presented from an asserted CDCR insider position and disclosed, purported to disclose, or implied knowledge of nonpublic medical, custodial, or file-derived information.

18

130. Direct-Access DOES 1-5 received, forwarded, copied, displayed, retained, transmitted, or assisted in the BEAM/BURNES/GARCIA direct-access chain involving Plaintiff's 19CM-1882 photographs or Plaintiff-identifying confidential file materials.

131. Use of a personal phone, personal email account, social-media account, cloud account, or other non-CDCR storage did not make the conduct private where the access, copies, authority, credibility, or opportunity to possess, display, retain, transmit, or publicly discuss the materials came from CDCR employment, official records, staff-held copies, staff status, or official-access pathways.

132. Plaintiff did not consent to Defendants' access, possession, display, transmission, publication, retention, discussion, or disclosure of those materials.

133. Defendants' conduct as above described/alleged was intentional or reckless, not merely negligent, and lacked any legitimate penological, investigative, medical, safety, litigation, or court-controlled purpose. In the custodial setting, unauthorized possession, retention, disclosure, public discussion, or inmate-facing display of restricted official-access materials exposed Plaintiff to foreseeable privacy loss, targeting, safety harm, and mental-health harm.

134. As a direct and proximate result, Plaintiff suffered loss of confidentiality and control over protected information, humiliation, exposure of medical and vulnerable-setting information, sexualized and sex-based targeting, threats, fear for safety, worsening mental-health symptoms, self-injury, physical injury, scarring, crisis placements, and continuing risk of further dissemination.

135. Defendants BEAM, BURNES, GARCIA, CAVANAUGH, and Direct-Access DOES 1-5 violated Plaintiff's Fourteenth Amendment right to informational privacy and substantive due process.

### VII. CLAIM TWO: EIGHTH AMENDMENT DELIBERATE INDIFFERENCE

*Against Defendants CAVANAUGH, GARCIA, GUILLEN, CAMPBELL, BROOMFIELD, GATES, JACKSON, HERNANDEZ, ESPINO/ESPI, GONZALES, and Post-Notice DOES 6-10*

136. At all relevant times, Defendants CAVANAUGH, GARCIA, GUILLEN, CAMPBELL, BROOMFIELD, GATES, JACKSON, HERNANDEZ, ESPINO/ESPI, GONZALES, and

19

Post-Notice DOES 6-10 acted under color of state law.

137. Plaintiff was incarcerated under conditions posing a substantial risk of serious harm to his safety and health because confidential 19CM-1882 materials, Plaintiff-identifying information, staff-linked public comments, staff-displayed photographs, false sex-offense narratives, and disputed institutional paperwork were circulating among staff, inmates, or the public and were being used to threaten, harass, or target Plaintiff.

138. Plaintiff repeatedly reported that the circulation and staff-linked commentary caused threats, fear for safety, worsening mental-health symptoms, self-harm, physical injury, and crisis placements. Plaintiff does not seek liability based only on grievance denial, supervisory status, or disagreement with an administrative result, but on each Defendant's own risk-creating conduct or refusal to take reasonable available measures after actual notice.

139. CAVANAUGH personally created or increased the risk by publicly identifying Plaintiff as an inmate who had been under his custody and making stigmatizing statements concerning Plaintiff's medical status and alleged assaultive conduct toward staff. Plaintiff alleges CAVANAUGH made those statements while invoking his CDCR custodial relationship to Plaintiff, in the same public thread as GARCIA's file-access comments, and knew from correctional training and experience that such statements could be repeated inside prison and used to threaten, harass, or target Plaintiff.

140. GARCIA personally created or increased the risk by publicly making false sexualized or sex-based statements about Plaintiff while identifying herself as a CDCR/CSP-Corcoran employee and presenting her comments as file-based or official-report-based. Plaintiff alleges GARCIA knew from correctional training and experience that sex-offense labels, sexualized motive claims, and insider-framed statements about a prisoner can be repeated inside custody and used to threaten, harass, or target that prisoner.

141. GUILLEN had actual knowledge through grievances, complaints, captures, links, and Plaintiff's reports that confidential 19CM-1882 materials and inflammatory narratives were being publicly circulated, that current or former CDCR-affiliated persons claimed file access, that inmates were using the materials to threaten Plaintiff, and that Plaintiff requested

investigation, mitigation, file-security review, copy-control, and takedown-related action. GUILLEN failed to take reasonable available measures, including documentation, referral, preservation, audit or file-security review, mitigation, or comparable legal-process/account-review/takedown-related steps allegedly used in another CSP-Corcoran inmate matter.

142. CAMPBELL had actual knowledge through grievances, attachments, institutional records, and Plaintiff's statements that she personally reviewed before issuing, signing, approving, or adopting a final denial or refusal. Those materials informed CAMPBELL that confidential 19CM-1882 materials and Plaintiff-identifying images were circulating publicly, that heightened file security had allegedly been removed or compromised, that Plaintiff requested breach review, preservation, mitigation, documentation, referral, copy-control, and file-security review, and that the continuing disclosure was causing safety and mental-health harm. CAMPBELL nevertheless refused or failed to take reasonable available measures within her authority, including requesting audit review, requiring documentation or preservation, referring the file-security issue for review, or initiating mitigation review. Plaintiff alleges CAMPBELL's final refusal deliberately blocked further mitigation through the institutional review channel after she had actual notice of the continuing disclosure, safety risk, and mental-health harm.

143. BROOMFIELD actively participated in DRB, classification, housing, or safety-review proceedings in which Plaintiff reported staff-linked dissemination of confidential 19CM-1882 materials, inflammatory comments, inmate threats, increased safety concerns, and insecurity involving Plaintiff's protected records. BROOMFIELD acknowledged Plaintiff's media exposure, case notoriety, and related safety concerns but failed to document the risk, refer the matter for review, consider the staff-linked dissemination and threat information in Plaintiff's safety, housing, or classification determinations, or initiate protective or investigative action.

144. GATES had actual knowledge through healthcare-related materials, grievances, attachments, and Plaintiff's reports that she personally reviewed before issuing, approving, or adopting a final refusal. Those materials informed GATES that Plaintiff's image from a mental-health, medical, strip-search, injury-inspection, or vulnerable-patient setting had been publicly

21

circulated and was causing ongoing privacy, safety, and mental-health harm. GATES nevertheless refused or failed to take reasonable available measures within her authority, including referral for breach review, mitigation, documentation, preservation, copy-control, or access-review measures. Plaintiff alleges GATES's final refusal deliberately blocked further mitigation through the healthcare/privacy-review channel after she had actual notice of the continuing disclosure and harm.

145. JACKSON had actual knowledge when Plaintiff showed or attempted to show documentation of online photographs, staff comments, and ongoing threats, and requested file-security review, documentation of the breach, and reporting of misconduct. JACKSON failed to take reasonable available measures by refusing documentation, refusing to refer the file-security and threat information to staff with authority to review it, and failing to report or refer the alleged misconduct.

146. HERNANDEZ and ESPINO/ESPI had actual knowledge during ISU safety-assessment, housing-review, or related proceedings that inmates and staff were referencing leaked 19CM-1882 photographs, public threats, inflammatory comments, falsified paperwork, CAVANAUGH-type inflammatory statements, GARCIA-type inflammatory statements, and staff-linked narratives to threaten Plaintiff. HERNANDEZ and ESPINO/ESPI failed to take reasonable available measures by refusing to accept or document Plaintiff's evidence; omitting from the final safety assessment information about BURNES or other staff showing inmates photographs, inmate access to photographs, inmate threats, inflammatory narratives, false sex-offense claims, disputed CDCR Form 114 information, and social-media threat information; and selectively including other statements from the same reports or interviews.

147. GONZALES had actual knowledge through confidential-source information, internal notice, reports available to him, and/or a social-media post attributed to Robert Gonzales or an account using that name, that officers were showing inmates 19CM-1882 photographs and making inflammatory statements that threatened Plaintiff's safety. Plaintiff alleges GONZALES knew the information concerned staff-linked dissemination of confidential case materials and an active safety threat, but failed to document, refer, preserve, or act on that

22

information.

148. Post-Notice DOES 6-10 had actual knowledge through grievances, interviews, safety reviews, confidential-source information, written materials, or institutional records that Plaintiff faced threats and worsening mental-health harm from staff-linked dissemination of confidential 19CM-1882 materials. Despite that knowledge, they failed to take reasonable available measures within their authority, including documentation, referral, preservation, investigative review, file-security action, or safety-related mitigation.

149. Through the conduct described above, Defendants actually knew Plaintiff faced a substantial risk of serious harm and consciously disregarded that risk by creating or increasing the danger, refusing available mitigation, blocking review, or failing to document, refer, preserve, investigate, mitigate, or include the threat information in safety, housing, file-security, privacy, or healthcare-review channels.

150. As a direct and proximate result, Plaintiff's confidential materials remained unsecured, the leak remained unaddressed, and Plaintiff continued to suffer sexualized and sex-based targeting, threats, humiliation, fear for safety, worsening mental-health symptoms, self-harm, physical injury, scarring, and repeated crisis placements.

151. Defendants CAVANAUGH, GARCIA, GUILLEN, CAMPBELL, BROOMFIELD, GATES, JACKSON, M. HERNANDEZ, ESPINO/ESPI, GONZALES, and Post-Notice DOES 6-10 violated Plaintiff's rights under the Eighth Amendment.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment in his favor and against Defendants as follows:

a. Compensatory damages against individual-capacity Defendants, jointly and severally where permitted, in an amount to be determined by the trier of fact; for purposes of Rule 54(c), Plaintiff demands compensatory damages up to $25,000,000;

b. Nominal damages of $1.00 against each Defendant found liable;

c. Punitive damages against each individual-capacity Defendant where permitted by law; for purposes of Rule 54(c), Plaintiff demands punitive damages up to $5,000,000 against each

23

individual-capacity Defendant found liable;

d. Costs, pre- and post-judgment interest where permitted by law;

e. Narrowly tailored injunctive relief requiring BEAM, BURNES, GARCIA, CAVANAUGH, Direct-Access DOES 1-5, and any Defendant or person acting in active concert with them after notice of the order to preserve evidence and stop further unauthorized possession, copying, display, inmate-facing disclosure, transmission, posting, sale, trade, monetization, retention, or public discussion of Plaintiff's nonpublic 19CM-1882 photographs, Plaintiff-identifying confidential file materials, or related CDCR/CCHCS/ISU/IGI/C-file/SOMS-derived information, except as required by court order, lawful discovery, litigation hold, authorized official duty, or court-approved sealing/redaction procedure;

f. After preservation and any court-approved evidentiary imaging, an order requiring any Defendant with possession, custody, or control of unauthorized copies to identify, surrender, return, delete, or destroy unauthorized copies of Plaintiff's 19CM-1882 photographs and related protected materials, including copies held on personal devices, cloud accounts, personal email accounts, messaging accounts, social-media accounts, websites, backup accounts, removable storage, or other non-CDCR storage, and to provide sworn certification of compliance;

g. An order requiring CDCR to provide Plaintiff an Olson review, or equivalent authorized review, of the disputed CDCR Form 114 and other records in Plaintiff's file (not to be filed on the Court's docket or through ECF), and, if any record is found materially false or inaccurate, to remove and destroy it, provide a corrected document, and prohibit further reliance on it for classification, housing, DRB, or safety decisions; and,

h. Such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

June 24, 2026

p.p. Jamie Osuna BD0868

24